UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT GARNER,

    Petitioner,

v.                                     Case No. 8:25-cv-1159-WFJ-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Robert Garner, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 8). Mr. Garner filed a reply. (Doc. 12). After careful review, the petition is **DENIED**.

**I.    Background**

On January 26, 1992, Mr. Garner and two of his friends "participated in the brutal killing of two elderly victims who were neighbors of Mr. Garner and personally known to him." *Garner v. State*, 382 So. 3d 17, 18 (Fla. 2d DCA 2024). At the time, Mr. Garner was four months shy of his eighteenth birthday. (Doc. 9-2, Ex. 30, at 3). He and his friends "planned the murder for approximately a week" before breaking into the victims' house and killing them. (*Id.*) Mr. Garner and one of his accomplices cut off the male victim's pinky finger "to bring it back to show their friends." (*Id.*) They also tried "to burn the house down in an attempt to cover up the crime." (*Id.*)

1

Following a jury trial, Mr. Garner was found guilty of two counts of first-degree murder. *Garner*, 382 So. 3d at 18. The trial court sentenced him to "two consecutive life sentences, each with a twenty-five-year mandatory minimum term." *Id.* As a result, Mr. Garner would be eligible for parole after fifty years in prison. *Id.* at 18 n.2. The sentences were affirmed on direct appeal, and Mr. Garner unsuccessfully sought postconviction relief in state and federal court. *Id.*; *see also Garner v. McDonough*, No. 8:06-cv-1254-JSM-EAJ, 2006 WL 3086888 (M.D. Fla. Oct. 27, 2006).

Over a decade after sentencing, the Supreme Court held in *Graham v. Florida* that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender" convicted of a non-homicide offense. 560 U.S. 48, 82 (2010). Two years later, in *Miller v. Alabama*, the Court outlawed "mandatory life without parole" for juveniles convicted of homicide offenses. 567 U.S. 460, 465 (2012). Citing *Graham* and *Miller*, along with related developments in Florida law, Mr. Garner moved for resentencing. *Garner*, 382 So. 3d at 19. He argued that "his two consecutive life sentences with the possibility of parole after twenty-five years constituted a de facto life sentence and were thus impermissible for a juvenile." *Id.*

The postconviction court ultimately held a resentencing hearing. *Id.* at 20. Mr. Garner "presented testimony from several witnesses including family members and friends, as well as a psychologist who discussed the effects of trauma on a juvenile brain." *Id.* The court elected to impose the same sentences as before: "life imprisonment with the possibility of parole after twenty-five years as to each count, to run consecutively to each other." (Doc. 9-2, Ex. 30, at 5). The court acknowledged that Mr. Garner was "still a minor"

when he committed the murders. (*Id.* at 3). It also noted that he had "suffered traumas in his youth[,] includ[ing] chronic poverty, witnessing of domestic violence, and physical and verbal abuse." (*Id.*) But the court chose to impose the same sentences because (1) "the nature of the crime was egregious," (2) the crime "had a significant effect" on the victims, their family, and "the community," (3) Mr. Garner's "actions were not impetuous, as he planned th[e] crime well before committing it and had ample opportunity to reflect on his decision," and (4) Mr. Garner "knew his actions were wrong" despite his "youth." (*Id.* at 3-4).

The Second District Court of Appeal affirmed the resentencing. *Garner*, 382 So. 3d at 18. It rejected Mr. Garner's argument that "his consecutive life sentences for the two homicides, with the possibility of parole after the completion of both twenty-five-year mandatory minimums, [were] unconstitutional." *Id.* at 20. The Second District explained that a "juvenile life sentence with the possibility of parole is not illegal under the law as it now stands." *Id.* at 21-22 (citation omitted). It also held that Mr. Garner's "parole-eligible sentences grant[ed] him a meaningful opportunity for release" in his lifetime. *Id.* at 22. Having failed to obtain relief in state court, Mr. Garner filed a federal habeas petition challenging his sentences of life with the possibility of parole.[1] (Doc. 1).

---

[1] As noted above, Mr. Garner previously sought federal habeas relief from his convictions. *Garner*, 2006 WL 3086888, at *1. After the Second District affirmed the resentencing, Mr. Garner asked the Eleventh Circuit for permission to file a second or successive habeas petition. *In re Robert Garner*, No. 25-11074, Doc. 1 (11th Cir.). The Eleventh Circuit denied the request as unnecessary, explaining that the resentencing order was "a new judgment that [Mr. Garner] ha[d] not challenged with a § 2254 petition," and that therefore he did not need the Eleventh Circuit's "authorization to file a § 2254 petition challenging" the resentencing. *Id.*, Doc. 2 at 4 (11th Cir.).

3

## II.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable

application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

**III.   Discussion**

Mr. Garner raises a single claim for relief: that his two consecutive life sentences, each with the possibility of parole after twenty-five years, violate the Eighth Amendment because they deny him a "meaningful opportunity" for release. (Doc. 1 at 6). Mr. Garner's initial interview with the Parole Commission is scheduled for July 2041. (Doc. 9-2, Ex. 26, at 123). At that time, he will be sixty-seven years old. (*Id.* at 160). According to Mr. Garner, however, there is only "a remote possibility at best" that he will be released because parole "is granted roughly less than one percent of the time" in Florida. (Doc. 1 at 6). Because he allegedly has only a "remote, unreliable chance for release," Mr. Garner contends that his life-with-parole sentences violate the Eighth Amendment "as defined by *Graham*, *Miller*, and their progeny." (*Id.* at 6-7).

After careful review, the Court concludes that Mr. Garner is not entitled to relief.[2] The Second District rejected Mr. Garner's Eighth Amendment claim on the merits. *Garner*,

---

[2] Respondent argues that the petition is untimely, but the Court need not reach that issue because "the petition fails on the merits." *McCormack v. Sec'y, Fla. Dep't of Corr.*, No. 22-14071, 2024 WL 3668519, at *1 (11th Cir. Aug. 6, 2024) ("[Petitioner] argues that his petition is both timely and meritorious. We need not decide whether [the] petition was timely because, even if it was, the petition fails on the merits."); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that AEDPA's statute of limitations "is not jurisdictional").

5

382 So. 3d at 20-22. Thus, AEDPA's "highly deferential standards" apply. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022). To prevail, Mr. Garner must show that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). "[A]n unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* In other words, AEDPA "provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *Id.* at 426. A federal court is not "limited by the particular justifications the state court provided for its decision, and . . . may consider additional rationales that support the state court's determination." *Davis v. Comm'r, Ala. Dep't of Corr.*, 120 F.4th 768, 789 (11th Cir. 2024).

Mr. Garner cannot satisfy AEDPA's "difficult" standard. *Woods v. Donald*, 575 U.S. 312, 316 (2015). According to Mr. Garner, his life-with-parole sentences for first-degree murder violate the Eighth Amendment by denying him a "meaningful opportunity" for release. (Doc. 1 at 6). But the "meaningful opportunity" rule applies only to juvenile *non-homicide* offenders. The rule is drawn from *Graham*, in which the Supreme Court held that the Eighth Amendment bars "the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82. In doing so, the Court "said that states must provide non-homicide juvenile offenders with 'some meaningful

6

opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Howard v. Coonrod*, 134 F.4th 1136, 1143 (11th Cir. 2025) (quoting *Graham*, 560 U.S. at 75). But the Court "has never extended the 'meaningful opportunity' rule to homicide offenders" such as Mr. Garner. *Id.* at 1144; *see also id.* at 1145 (noting that "*Graham*'s 'meaningful opportunity' rule doesn't extend to homicide offenders"). Therefore, the rejection of Mr. Garner's Eighth Amendment challenge was neither "contrary to" nor an "unreasonable application" of *Graham*.[3] 28 U.S.C. § 2254(d)(1); *see also Atkins v. Crowell*, 945 F.3d 476, 479 (6th Cir. 2019) (holding that it was not clearly established that *Graham*'s "meaningful opportunity" rule extends to homicide offenders).

Nor did the Second District contravene *Miller*. In that decision, the Supreme Court held that a sentence of "mandatory life *without parole* for those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465 (emphasis added). But Mr. Garner did not receive a life-without-parole sentence. He will be eligible for parole in July 2041, when he will be sixty-seven years old. (Doc. 9-2, Ex. 26, at 123, 160). "*Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole." *Atkins*,

---

[3] Even if the "reasonable opportunity" rule applied to juvenile homicide offenders, Mr. Garner would not be entitled to relief. "Florida's statutory parole process fulfills *Graham*'s requirement that juveniles be given a 'meaningful opportunity' to be considered for release during their natural life based upon normal parole factors, as it includes initial and subsequent parole reviews based upon individualized considerations before the Florida Parole Commission that are subject to judicial review." *Franklin v. State*, 258 So. 3d 1239, 1241 (Fla. 2018) (citation omitted). Mr. Garner alleges that parole is only a "remote possibility at best" in his case. (Doc. 1 at 6). But "[e]ven if only infrequently, [the Florida Parole Commission] does sometimes authorize release." *Howard*, 134 F.4th at 1149. And the Eighth Amendment "demands a *meaningful opportunity* for release—not a *likelihood* of release." *Id.* Thus, the Second District reasonably concluded that Mr. Garner's life sentences provide him with a "'meaningful opportunity' for release in his natural life." *Garner*, 382 So. 3d at 22.

945 F.3d at 478. Indeed, *Miller* "reasoned that life-without-parole sentences are unique, noting that they 'share some characteristics with death sentences that are shared by no other sentences.'" *Id.* (quoting *Miller*, 567 U.S. at 474); *see also Webster v. Royce*, No. 97-cv-2146-NG, 2021 WL 3709287, at *17 (E.D.N.Y. Aug. 20, 2021) ("[T]he Supreme Court has not clearly established that a sentence of fifty years to life imposed on a juvenile is the functional equivalent of life without parole." (citations omitted)).

Even if Mr. Garner had received life-without-parole sentences, they still would comply with *Miller* because they were not "mandatory." *Miller*, 567 U.S. at 465. *Miller* requires "only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing" a life-without-parole sentence. *Id.* at 483. In resentencing Mr. Garner, the postconviction court expressly considered his "age, maturity, [and] intellectual capacity," as well as "[t]he effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on [his] participation in the offense." (Doc. 9-2, Ex. 30, at 3). Thus, the court followed *Miller*'s directive to give "individualized 'consideration' to . . . the defendant's 'chronological age and its hallmark features.'" *Jones v. Mississippi*, 593 U.S. 98, 109 (2021) (quoting *Miller*, 567 U.S. at 477).

In short, no Supreme Court precedent "clearly require[d]" the Second District to find that Mr. Garner's life-with-parole sentences violated the Eighth Amendment. *Kernan v. Cuero*, 583 U.S. 1, 3 (2017) (emphasis omitted). Thus, he is not entitled to habeas relief.

### IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Garner's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Garner and to **CLOSE** this case.

3. Mr. Garner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Garner has not made the requisite showing. Because Mr. Garner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on December 12, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE